UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| UNITED STATES,<br>Plaintiff,<br>v.<br>GEOVHAN THOMAS,<br>Defendant. | C.A. No. 22-cr-126-MRD-PAS |

## AMENDED MEMORANDUM AND ORDER

MELISSA R. DUBOSE, United States District Judge.

Geovhan Thomas is charged with numerous gun and drug offenses which stem from the search of his residence on October 31, 2022. Mr. Thomas contends the search warrant upon which the police relied to execute the search lacked probable cause. He also argues that the affidavit submitted in support of the search warrant contained intentional misrepresentations and material omissions. Accordingly, he filed a Motion to Suppress Evidence seized because of that search and has asked the Court for a *Franks* hearing based on the alleged misrepresentations and omissions in the search warrant application. After reviewing the warrant, affidavit, and parties' memoranda, the Court concludes that Mr. Thomas is not entitled to a *Franks* hearing and that the search warrant was supported by probable cause. Therefore, the Motion is DENIED.

## I. BACKGROUND[1]

On October 31, 2022, Detective Mario Cerullo applied for a search warrant for 54 Woodside Avenue, West Warwick, Rhode Island and for a 2016 brown colored Honda CRV. Detective Cerullo applied for the search warrant based on information provided by Nadisha Foster earlier that morning.

Nadisha Foster ("Ms. Foster") and Geovhan Thomas ("Mr. Thomas") are intimate partners who have one child together. ECF No. 71 at 1; ECF No. 75 at 1. Just before 1:00am on October 31, 2022, officers from the West Warwick Police Department were dispatched to 63 East Main Street in West Warwick, Rhode Island to speak with Ms. Foster. Ms. Foster contacted 911 from this address to report that Mr. Thomas assaulted her and held her against her will for over an hour at 54 Woodside Avenue, a house located in West Warwick. She reported that the assault happened after Mr. Thomas accused her of flirting with his friends earlier in the evening. Ms. Foster explained that Mr. Thomas yelled at her, struck her in the face with a closed fist, and refused to let her leave. This occurred in the presence of her two children. During the assault, Mr. Thomas allegedly warned Ms. Foster that, "[if] you leave I'm going to shoot you." She reported that the verbal assaults continued for over an hour before Mr. Thomas allowed Ms. Foster and the children to leave the house. Before Ms. Foster left, she alleges that "she observed Geovhan retrieve a firearm and several pills from his bedroom[.]"

---

[1] Unless otherwise noted, the following background information comes from the challenged search warrant and affidavit. ECF No. 71-1.

Ms. Foster left the residence, called 911, and met with officers to make a report of the incident. During this conversation, she informed officers that Mr. Thomas possesses narcotics and has access to firearms. She told officers that she had seen him handle firearms in the 54 Woodside residence on the night of the assault and on previous occasions. The firearms were described as "Small" and "Big," and she provided officers with three photographs purporting to show Mr. Thomas handling firearms. One photograph is of an individual holding a revolver on his lap. Another shows Mr. Thomas holding a semi-automatic rifle, and the third is of three rifle type firearms in the corner of a bedroom.

At some point that morning, officers arrested Mr. Thomas on charges of domestic kidnapping, domestic simple assault or battery, domestic disorderly conduct, and domestic refusal to relinquish a telephone. The arrest occurred "as a result of a motor vehicle stop after leaving his residence." After the arrest, officers maintained surveillance of the residence and sought a search warrant for 54 Woodside Avenue and a brown colored Honda CRV. Based on the information and events described above, Detective Cerullo applied for the warrant, believing that there was probable cause that Mr. Thomas was "possessing, storing, and concealing firearms and narcotics inside 54 Woodside Avenue … and within … a 2016 brown colored Honda CRV, which … was operated by Geovhan at the time of his arrest …." The warrant was authorized by an Associate Judge of the Rhode Island State District Court.

The search warrant was executed on October 31, 2022, and police found and seized firearms, suspected cocaine, ammunition, and other gun and drug related paraphernalia inside the 54 Woodside Avenue residence.[2]

## II. LEGAL STANDARD

### A. PROBABLE CAUSE

Under the Fourth Amendment, a search warrant may not issue "unless probable cause is properly established and the scope of the authorized search is set out with particularity." *Kentucky v. King*, 563 U.S. 452, 459 (2011). To obtain a search warrant, "'[a] warrant application must demonstrate probable cause to believe that (1) a crime has been committed – the 'commission' element, and (2) enumerated evidence of the offense will be found at the place searched – the so-called 'nexus' element.'" *United States v. Dixon,* 787 F.3d 55, 59 (1st Cir. 2015) (quoting *United States v. Feliz,* 182 F.3d 82, 86 (1st Cir. 1999)). "As to the nexus element, the magistrate judge must 'make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit[,]…there is a fair probability that contraband or evidence of a crime will be found in a particular place.'" *United States v. Gonzalez,* 113 F.4th 140, 148 (1st Cir. 2024) (quoting *Illinois v. Gates,* 462 U.S. 213, 238 (1983)); *see also United States v. Badessa,* 752 F.2d 771, 774 (1st Cir. 1985) ("For a search warrant…the key [is] not whether [the] defendant was engaged in

---

[2] The substance found initially field tested positive for cocaine and an indictment was returned listing cocaine, however the confirmatory test showed the substance to be fentanyl. The case was presented to a grand jury which returned a superseding indictment on a fentanyl charge.

unlawful activity at [the premises] … but whether physical evidence of criminal activity [is] present there.”).

“Probable cause means simply that the totality of the circumstances gives rise to a ‘fair probability’ that a search of the target premises will uncover evidence of a crime.” *United States v. Jewell,* 60 F.3d 20, 23 (1st Cir. 1995) (citing *United States v. Jordan,* 999 F.2d 11, 13 (1st Cir. 1993)); *see also United States v. Beckett,* 321 F.3d 26, 31 (1st Cir. 2003) (“In determining the sufficiency of an affidavit supporting a search warrant, we consider whether the ‘totality of the circumstances’ stated in the affidavit demonstrates probable cause to search the premises.”) (citing *United States v. Khounsavanh,* 113 F.3d 279, 283 (1st Cir. 1997)). “More often, there will be some facts and circumstances that paint the picture not in black and white, but in varying shades of gray.” *United States v. Clark,* 685 F.3d 72, 78 (1st Cir. 2012). “The task of the [reviewing judge] is to make certain that she focuses on the forest – not on the individual trees.” *Id.* “The ultimate question is not whether there is some doubt but, rather, whether the totality of the facts and circumstances described in the affidavit, viewed objectively, gives rise to a fair probability that a crime has been committed and that the search, if allowed, will reveal evidence of it.” *Id.* And a “[f]air probability is less than a more-likely-than not standard.” *Gonzalez,* 113 F.4th at 148 (citing *Feliz,* 182 F.3d at 88). Lastly, but importantly, “‘[a] magistrate’s determination of probable cause should be paid great deference by reviewing courts[,]’” such as this one. *Clark,* 685 F.3d at 78 (quoting *Gates,* 462 U.S. at 236).

### B. *Franks* Hearing

In general, "[t]here is…a presumption of validity with respect to the affidavit supporting the search warrant." *Franks v. Delaware,* 438 U.S. 154, 171 (1978). In order to challenge the validity of a search warrant (and thus, be entitled to a *Franks* hearing), the defendant must make a "substantial preliminary showing" that (1) the affidavit "contains false statements or omissions, made intentionally or with reckless disregard for the truth," and (2) "that a finding of probable cause would not have been made without those false statements or omissions[.]" *United States v. Arias,* 848 F.3d 504, 511 (1st Cir. 2017) (citing *United States v. Tanguay,* 787 F.3d 44, 49 (1st Cir. 2015); *United States v. McLellan,* 792 F.3d 200, 208 (1st Cir. 2015)). "The preliminary showing for a *Franks* hearing requires that *both* of these elements be established." *United States v. Cartagena,* 593 F.3d 104, 112 (1st Cir. 2010).

## III. DISCUSSION

Mr. Thomas asserts that the items seized as a result of the search of 54 Woodside must be suppressed because the "four corners" of the Search Warrant are factually insufficient and fail to establish probable cause. ECF No. 71 at 3. The Motion also requests a *Franks* hearing on the basis that Detective Cerullo's description of the three photographs in the Search Warrant Affidavit constitute "intentional misrepresentations and material omissions." *Id.* at 8. The Court will begin with the *Franks* hearing analysis then move on to the "four corners" argument because the first analysis may impact the second. *See United States v. Roman*, 942 F.3d 43, 48–50 (1st Cir. 2019).

### A. The Defendant Is Not Entitled To A *Franks* Hearing

Mr. Thomas argues that Detective Cerullo's affidavit contains "intentional omission[s] of critical facts describing the photos" and suggests his description of the photographs is misleading. ECF No. 71 at 8. Specifically, he takes issue with the Detective identifying Mr. Thomas as the person in two of the photos when neither definitively shows Mr. Thomas' entire face and body. *Id.* This, he says, was done "to intentionally mislead the judge into believing the photographs with firearms were undoubtedly Mr. Thomas." *Id.* The Government responds that the affidavit clearly attributes the identification in those photos to Ms. Foster and that Detective Cerullo did not "determine[] them to be [Mr. Thomas] sua sponte." ECF No. 75 at 14.

As noted above, entitlement to a *Franks* hearing requires Mr. Thomas make a "substantial preliminary showing" that (1) the affidavit "contains false statements or omissions, made intentionally or with reckless disregard for the truth," and (2) "that a finding of probable cause would not have been made without those false statements or omissions[.]" *Arias,* 848 F.3d at 511. Mr. Thomas fails on both factors.

The challenged portion of the Affidavit reads as follows:

> Nadisha provided officers with several photographs of Geovhan handling firearms while inside [the residence] which she took. Nadisha described these firearms as being "Small" and "Big." In one (1) of the photographs Geovhan is holding a revolver. In another photograph Geovhan is holding what appears to be a semi-automatic rifle.

ECF No. 78-1 at 5. This makes clear that Nadisha identified the person in the photographs as Mr. Thomas, and the Judge had the benefit of that exact information. The Court agrees with the Government that "Defendant's motion reads as if Detective

Cerullo stumbled across photos, without context … [and] misattributes the identification of Defendant [in] these photos to Detective Cerullo[,]" ECF No. 75 at 14, which is not the case. Mr. Thomas' argument falls short of his burden of making a "substantial preliminary showing" that the Detective Cerullo's Affidavit contains "false statements or omissions, made intentionally or with reckless disregard for the truth[.]" *Arias,* 848 F.3d at 511. Because his request for a *Franks* hearing fails at the first prong, the Court declines to analyze the second prong.[3]

**B. The Affidavit in Support of the Search Warrant Established Probable Cause**

Mr. Thomas also argues that the four corners of the Search Warrant Affidavit fail to establish probable cause and specifically points to information omitted from the Affidavit that would have been helpful in establishing probable cause. ECF No. 71 at 3–8. The omitted information, he argues, includes evidence corroborating Ms. Foster's allegation that she was repeatedly struck in the face by a fist, evidence of her demeanor when she spoke to police, any notation that children were present at the time of the alleged assault, lack of specificity as to the type of drugs, and the previously mentioned photographs. *Id.* Mr. Thomas argues that inclusion of this

[3] Mr. Thomas' Motion asserts that the Affidavit contained other omissions, such as not describing Ms. Foster's demeanor when she spoke to the police or describing whether she exhibited injuries consistent with an assault. ECF No. 71 at 4–5. These arguments are within the section describing Mr. Thomas' arguments about why "[t]he search warrant is factually insufficient[,]" not the section describing the Affidavit's "intentional misrepresentations and material omissions." *Id.* at 3-9. To the extent Mr. Thomas argues that he is entitled to a *Franks* hearing based on these other "omitted facts[,]" the Court rejects the argument that those omissions create a "substantial preliminary showing" that are made "intentionally or with reckless disregard for the truth." *Arias*, 848 F.3d at 511.

evidence is essential for two purposes. First, he suggests that this evidence is a necessary consideration because it provides corroboration for the information in the Search Warrant Affidavit. Second, with all this information omitted, he suggests that the Search Warrant is not sufficiently particularized. *Id.* The Government counters that the "four corners" of the Search Warrant established probable cause and that the omitted information was not material to that finding. ECF No. 75 at 8–11, 15–24.

While a close call, the Court ultimately agrees with the Government that the Search Warrant Affidavit establishes probable cause to search the 54 Woodside Avenue residence for guns. To start, the Court finds that the Affidavit establishes the "commission element," *Dixon*, 787 F.3d at 59, because there are specific facts upon which the Judge could conclude that a crime had been committed. As the Government points out, the police were investigating a violent domestic incident where a known witness—Ms. Foster—complained to police that she was prevented from leaving the residence because Mr. Thomas was physically assaulting her and threatened to shoot her. ECF No. 75 at 8–9. Ms. Foster went on to note that Mr. Thomas actually "retrieve[d] a firearm and several pills from his bedroom[,]" that he "ha[d] access to firearms and that she had seen him handle them while inside" the residence, and capped it off by "provid[ing] officers with [] photographs of Geovhan handling firearms." ECF No. 71-1 at 4–5. This threat to shoot, combined with her statements that Mr. Thomas had handled firearms in the house on that night and the photographs, are enough to satisfy the commission element.

These same facts satisfy the nexus element. *Dixon,* 787 F.3d at 59. The question to answer here is "'whether, given all the circumstances set forth in the affidavit[,]… there is a fair probability that contraband or evidence of a crime will be found in a particular place.'" *Gonzalez*, 113 F.4th at 148 (quoting *Gates*, 462 U.S. at 238). Again, Ms. Foster told police that Mr. Thomas threatened to shoot her that night while they were inside 54 Woodside Avenue, the Defendant handled firearms inside this residence, including that night, and that the Defendant took pills and a firearm from his room before leaving the premises. ECF No. 71-1. Considering this testimony as set forth in the Affidavit, there is a sufficient nexus between the evidence to be seized (firearms) and the place to be searched (the 54 Woodside Avenue residence).

With respect to the drugs and drug-related paraphernalia, the Court finds that the four corners of the Affidavit failed to establish probable cause to search for these items. The Affidavit only contains two references to drugs: (1) Ms. Foster told police that Mr. Thomas retrieved pills from his bedroom before she left, and (2) she told police that Mr. Thomas possessed narcotics. ECF No. 71-1 at 4–5. This Affidavit lacks specificity and particularity from which a judge could conclude that a drug crime was in progress or that drugs would be found at the residence. *Gonzalez*, 113 F.4th at 148. Despite this, suppression of the drug and drug paraphernalia evidence is not warranted because it is well recognized that "[l]aw enforcement agents may seize evidence in plain view during a lawful search …." *United States v. Robles*, 45 F.3d 1, 6 (1st Cir. 1995). The Search Warrant authorized law enforcement to search

for "[f]irearms … and/or other property which constitutes evidence of firearms possession …." ECF No. 71-1 at 2. Thus, during the officers' search for firearms and related items, it would be proper to seize any narcotics or related paraphernalia that was in plain view. The plain view doctrine applies when "the officers' presence at the point of discovery [is] lawful, and [], the item's evidentiary value must be immediately apparent to the searchers." *Robles*, 45 F.3d at 6. Here, officers were lawfully in the home pursuant to a search warrant and the evidentiary value of narcotics was apparent. *See id.* And as the Supreme Court has explained, "[t]he fact that an officer is interested in an item of evidence and fully expects to find it in the course of a search should not invalidate its seizure if the search is confined in area and duration by the terms of a warrant or a valid exception to the warrant requirement." *Horton v. California*, 496 U.S. 128, 138 (1990); *see United States v. Perez Soto*, 80 F.4th 50, 60 (1st Cir. 2023).

When the Court focuses on the forest, not the individual trees, *see Clark,* 685 F.3d at 78, the Court is satisfied that the four corners of the Affidavit established probable cause for the search of the 54 Woodside Avenue residence for firearms and that the drugs and drug paraphernalia were in plain view as law enforcement executed the search warrant.[4]

---

[4] With respect to the search of the vehicle, the Court agrees with Mr. Thomas' position that the Affidavit does not establish probable cause to search the 2016 brown colored Honda CRV for narcotics and firearms. *See* ECF No. 71 at 7. The only time this vehicle is mentioned is in the very last paragraph of the Affidavit where it states,"[b]ased on the above circumstances, your affiant request [sic] that a search warrant for 54 Woodside Avenue … and a brown colored Honda CRV[.]" ECF No. 71-1 at 5. The Affidavit is silent as to any conclusions, assertions, or facts about the

### C. The Good Faith Exception Applies

Even though the Court concludes that probable cause supported the Search Warrant issued, the Court is taking this moment to relay that, had it reached the opposite conclusion, suppression would not have been the automatic remedy because the "good faith" exception to the exclusionary rule would apply here. The Government contends this rule applies because "the investigators acted in good faith reliance on the warrants in this case." ECF No. 75 at 25. Mr. Thomas disagrees and suggests the warrant was so lacking that any reliance upon it was objectively unreasonable. ECF No. 71 at 9.

The "good faith" exception to the exclusionary rule applies "when an officer acting with objective good faith has obtained a search warrant from a judge or magistrate and acted within its scope." *United States v. Leon*, 468 U.S. 897, 920 (1984). The First Circuit has discussed that the good faith exception does not apply in four situations: (1) "if the magistrate or judge in issuing a warrant was misled by information in an affidavit that the affiant knew was false or would have known was false except for his reckless disregard for the truth[,]" (2) if "the issuing magistrate wholly abandoned his judicial role[,]" (3) if the warrant affidavit is "so lacking in indicia of probable cause as to render official belief in [the warrant's] existence entirely unreasonable[,]" and (4) where the warrant is "so facially deficient—i.e., in

---

brown colored Honda CRV and its connection to suspected narcotics and firearms. Notwithstanding the foregoing, the Court notes that "[n]o firearms or narcotics were found in the Honda CRV[,]", ECF No. 73 at 5, and therefore, there is no evidence that may be suppressed despite the lack of probable cause for the search.

failing to particularize the place to be searched or the things to be seized—that the executing officers cannot reasonably presume it to be valid." *Id.* at 923 (citation modified). In relying on this exception, "[t]he [G]overnment bears the 'heavy burden' of showing that its officers acted with objective good faith." *Gonzalez*, 113 F.4th at 149 (citing *United States v. Wurie,* 728 F.3d 1, 13 (1st Cir. 2013)).

Here, none of the four situations apply and the Government has met this burden of showing officers acted with objective good faith. First, this is not a situation where the Judge was misled by an affidavit with obviously false information or abandoned his judicial role. Next, it also cannot be said that this warrant is "so lacking in probable cause" that the officers should have known it was invalid. These officers relied on a Search Warrant signed by a Judge who authorized them to search for guns, drugs, and other related paraphernalia based on report that a percipient witness (and alleged victim) was threatened with a gun. She observed the gun and drugs in the house on the night of October 30 and 31, and the search warrant was applied for and executed the same day (October 31). ECF No. 71-1. These same facts are why the last situation is inapplicable here. While the Court agrees that the Affidavit could have contained more information to bolster the probable cause analysis, it was not so facially deficient or lacking in particularity that executing officers could not have presumed it to be valid. The warrant authorized a search of the house where Mr. Thomas lived based on statements and photographs from Ms. Foster that he possessed "several firearms throughout the house." *Id.* at 5.

The Supreme Court has held that to "'trigger the exclusionary rule, police conduct must be sufficiently deliberate that exclusion can meaningfully deter it, and sufficiently culpable that such deterrence is worth the price paid by the justice system.'" *United States v. Monell,* 801 F.3d 34, 41 (1st Cir. 2015) (quoting *Herring v. United States,* 555 U.S. 135, 144 (2009)). In this case, there is nothing to deter and the Court concludes that the officers exercised good faith in relying on the Search Warrant.

## IV. CONCLUSION

For the foregoing reasons, Mr. Thomas's Motion to Suppress Evidence and Request for a *Franks* Hearing (ECF No. 71) is DENIED.

IT IS SO ORDERED.

Melissa R. DuBose
United States District Judge

11/17/2026